**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Fred SENSMEIER, Defendant–**
**Appellant.**

**No. 99–6069.**

United States Court of Appeals,
Sixth Circuit.

Jan. 30, 2001.

Before NELSON, SILER and CLAY,
Circuit Judges.

CLAY, Circuit Judge.

Defendant, Fred Sensmeier, appeals from a judgment of conviction on one count of federal kidnaping in violation of 18 U.S.C. § 1201(a)(1), alleging that there was insufficient evidence to sustain the conviction. For the reasons that follow, we AFFIRM Defendant's conviction.

## I.

In 1995, Defendant began an intimate relationship with Complainant, Alicia Wilson, at which time he moved into Complainant's Southaven, Mississippi apartment; they met four years prior to beginning their intimate relationship. Both Complainant and Defendant were truck drivers.

Defendant and Complainant had a tumultuous relationship. She testified that she had been beaten by him four times within a one and a half year period. In July of 1998, Complainant evicted Defendant from her apartment after finding a letter from another of his girlfriends. In August or September of 1998, however, Defendant and Complainant attempted to reconcile. They went out on October 4, 1998 and again on October 6, 1998.

This second date in October sparked the events which led to Defendant's arrest and conviction. After dinner on October 6, 1998, Defendant visited Complainant's apartment. After discovering signs that other men had been in the apartment, Defendant became enraged. He attempted to assault Complainant but she locked herself in her room and called the police. Defendant broke Complainant's bedroom door, but fled on foot and in the rain after Complainant called the police.

Complainant then gathered her belongings including a pistol and left in her truck to travel to Atlanta, Georgia to deliver a load of flammable cargo. Complainant traveled to President's Island[1] and picked up the truck she was supposed to drive and the load she had to deliver. Soon thereafter Defendant called Complainant on her mobile phone and told her that he left his keys at her apartment. He asked her to pick him up so that he could retrieve his keys from her home. When she refused to do so, Defendant threatened that he would break into her home, steal or destroy all of her property, and kill one of her two dogs—the other dog was with her. Complainant testified that she agreed to pick up Defendant out of fear for the safety of her property and her dog.

Complainant picked up Defendant at a pay phone. They proceeded to drive to Complainant's home. Complainant had begun to exit onto Interstate 55 (I–55) South when Defendant turned the truck's engine off. Once Complainant started the truck again and turned onto the exit ramp for I–55, Defendant turned the truck's engine off again and pulled the keys out of the ignition. Complainant testified that she tried to get out of the truck. (At this time, they were in Memphis, Tennessee.) As she was trying to get out of the truck, Defendant shut the door on her leg and began to choke her. Complainant testified that she lost consciousness and that when she regained it, she was half in the sleeper and half in the front of the truck.[2] She testified that Defendant began beating her with his fist. When the beatings subsided, Defendant got into the driver's seat and drove the truck two miles from Southaven, pulled over, and began beating her again. Complainant testified that as Defendant was pulling over, she heard him say, "this ought to be good." Complainant further testified that as Defendant approached the door of the sleeper, she got her pistol and attempted to shoot him, but the gun did not fire because Defendant had removed the bullets. Defendant then began driving

---

1. President's Island is a facility where truck drivers left their personal vehicles and picked up the trucks they drove for work.

2. At trial, Complainant described the truck she was driving at the time as having two captain's chairs, in the middle of the chairs there was an opening for a sleeper and closets on each side behind the chairs.

to Southaven, ran a traffic light in Mississippi, made a u-turn and started back towards Memphis. Complainant testified that Defendant told her he was going to run the traffic light so that she could not escape.

After driving a distance, Defendant told Complainant to get out of the truck and release the load or trailer that the truck was carrying. After she dropped the trailer, Defendant got back into the truck, began driving, and crossed the Mississippi River into Arkansas. He parked the truck behind a fireworks sign and turned the engine and the lights off. At this time, Complainant claims that Defendant threatened to kill her or put her in a cave in Arkansas. Defendant then began to drive up I–55 North and stopped at exit 17, where he continued to beat Complainant. She testified that he told her that he would make her walk back to Memphis just like she made him walk in the rain from her house earlier that day. While at exit 17, Complainant attempted to get out of the truck, but Defendant closed the door on her and began to beat her again. Complainant and Defendant then went to his apartment in West Memphis, Arkansas. Complainant testified that Defendant also hit her while she was in his apartment. Thereafter, they left his apartment and went to Southaven by way of Tennessee. They returned to Complainant's apartment where Defendant took some things including a television that he purchased as a gift for Complainant and his jacket. After they left Complainant's apartment, they traveled to President's Island where Defendant retrieved his pickup truck and left. Complainant testified that Defendant threatened to harm her if she told anyone what had happened. After Defendant left, Complainant called her dispatcher who, in turn, called the police.

Defendant also testified at trial and told a markedly different story. Defendant agreed that he and Complainant had dinner and returned to her apartment afterwards on October 6, 1998. However, Defendant claimed that he was simply picking up some of his belongings and did not know why Complainant called the police. Defendant also acknowledged that he called Complainant on her mobile phone after he left her home and requested that she return so that he could pick up his keys and jacket. Defendant, however, added that he called her after she paged him and that he did not threaten her. Defendant claimed that Complainant was under the influence of crystal methamphetamine and that she pulled a gun on him as they were driving to President's Island. Defendant testified that as he attempted to get the gun from Complainant, it was possible that the gun hit her. He also testified that he struck her three or four times around her head and shoulder area, but only with the intent of getting the gun from her.

On November 3, 1998, a federal grand jury indicted Defendant on two counts of interstate domestic violence in violation of 18 U.S.C. § 2261(a)(2), two counts of kidnaping in violation of 18 U.S.C. § 1201(a), and interstate theft of a motor vehicle in violation of 18 U.S.C. § 2314. Defendant was tried and found guilty of one count of kidnaping, count one of the indictment, and one count of interstate domestic violence, count three of the indictment. Defendant now appeals his conviction on count one, federal kidnaping, only.

## II.

We review a challenge to the sufficiency of evidence to determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt.'" *United States v. Kincaide*, 145 F.3d 771, 781 (6th Cir.1998) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). In making this determination, we refrain from weighing the credibility of witnesses or evidence. *See United States v. Welch*, 97 F.3d 142, 148 (6th Cir.1996). Moreover, " '[c]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.'" *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999) (quoting *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir.1986)).

### III.

■ Defendant challenges his conviction on count one of the indictment which charged that

> On or about October 7, 1998, in the Western District of Tennessee, the defendant, Fred Sensmeier did unlawfully, knowingly, and intentionally seize, confine, kidnap, abduct, and carry away Alicia Wilson for the purpose of committing an assault, and any other reason, did willfully transport her in interstate commerce, that is, between the States of Tennessee and Mississippi, in violation of Title 18, United States Code, Section 1201(a)(1).

(J.A. at 10.) Section 1201(a)(1) is violated when one "unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person ... when the person is willfully transported in interstate or foreign commerce ...." 18 U.S.C. § 1201(a)(1). Defendant argues that the government failed to prove beyond a reasonable doubt that he held Complainant "for ransom or reward or otherwise." Defendant contends that there is no evidence that he took Complainant to her home in Mississippi with any intent or purpose to assault her because the assault had occurred several hours before in the state of Tennessee. We find Defendant's argument unpersuasive and conclude that the evidence was sufficient to support his conviction for federal kidnaping.

■ There is no dispute that Defendant did not hold Complainant for ransom or reward; however, there is evidence that Defendant held Complainant for "otherwise" as it has been interpreted by the courts. In *Gooch v. United States*, 297 U.S. 124, 127–28, 56 S.Ct. 395, 80 L.Ed. 522 (1936), the Supreme Court interpreted the "or otherwise" language of the statute broadly. In that case, the Court recognized that in adding the phrase "or otherwise" to the federal kidnaping statute Congress intended to extend the jurisdiction of the statute to " 'persons who [had] been kidnaped and held, not only for reward, but for any other reason.'" *Id.* at 127 (quoting S. Rep. 534, 73d Cong., 2d Sess., March 22, 1934). The Court stated that "Congress intended to prevent transportation in interstate or foreign commerce of persons who were being unlawfully restrained in order that the captor might secure some benefit to himself." *Id.* at 128. In other words, "otherwise" includes any objective of a kidnaping which the defendant may find of sufficient benefit to induce him to commit the kidnaping. *See United States v. Eagle Thunder*, 893 F.2d 950, 953 (8th Cir.1990). The defendant need only hold the victim for "some purpose of his own." *Id.* (quoting *United States v. Melton*, 883 F.2d 336, 338 (5th Cir.1989)).

The indictment stated that Defendant kidnaped Complainant for the purpose of

assault or for any other reason.[3] In the instant case, the evidence was sufficient for a reasonable jury to find beyond a reasonable doubt that Defendant kidnaped Complainant for the purpose of assaulting her or for any other reason. First, the record is replete with evidence that Defendant assaulted Complainant throughout this ordeal. Moreover, there is evidence that Defendant kidnaped Complainant so that he could assault her without being detected and so that she would not have an opportunity to call the police. For instance, prior to one of the periods when Defendant beat Complainant, he reportedly pulled over to the side of the road and stated this ought to be good, intimating that he was looking for a secluded place. In addition, given that Complainant had called the police earlier when Defendant attempted to assault her, it was reasonable for a jury to conclude that Defendant kidnaped Complainant so that he could assault her without detection or confine her in a place where Complainant would not have an opportunity to call the police.

The evidence was also sufficient for a reasonable jury to find beyond a reasonable doubt that Defendant kidnaped Complainant for some other reason. For instance, there is evidence to support a jury finding that Defendant kidnaped Complainant for the benefit of seeking revenge. The evidence produced at trial showed that Complainant called the police to complain about Defendant. As a result, Defendant was "forced" to leave Complainant's home and walk in the rain. Moreover, Complainant testified that Defendant stated, at one point during this ordeal, that he would make her walk back to Memphis just like she made him walk in the rain from her house earlier that day. Therefore, the evidence was sufficient to support a finding that Defendant kidnaped Complainant to seek revenge for her having called the police on him earlier, a purpose other than the assault.

Defendant argues that the beating of Complainant occurred prior to the time they entered Mississippi; and that since he received no benefit after entering Mississippi from kidnaping or confining Complainant, the government failed to prove an essential element of the crime, namely purpose. This argument is not well-taken. First, there was sufficient evidence to show that Defendant continued to assault Complainant even after entering and leaving Mississippi. Complainant testified that Defendant beat her prior to running the traffic light in Mississippi; that he ran the light to prevent her from escaping; and that Defendant continued to beat and

---

**3.** Defendant argues that his conviction could only be sustained if the government proved that he kidnaped Complainant for the purpose of assaulting her because the "and for any other reason" portion of the indictment is too vague to satisfy the notice requirement of the Sixth Amendment. Not only did Defendant fail to challenge the sufficiency of the indictment below and properly do so before this Court, *see United States v. Vanover*, 888 F.2d 1117, 1120 (6th Cir.1989), this argument fails because the indictment need not state a particular purpose as long as it states that some purpose existed. *See United States v. Bentley*, 310 F.2d 685, 685 (6th Cir.1962) ("We are of the opinion that such an indictment need not contain any details of purpose or motive

...."). Moreover, the indictment specifically states that Defendant was being charged under § 1201(a)(1), which is sufficient to give Defendant notice. *See United States v. Adams*, 83 F.3d 1371, 1375 (11th Cir.1996). In *Adams*, the defendant challenged the sufficiency of the indictment charging him with federal kidnaping because it failed to state the purpose for which he kidnaped the victim. Relying on *Clinton v. United States*, 260 F.2d 824 (5th Cir.1958), the court rejected that claim. The *Adams* court reasoned that since "otherwise" comprehends any purpose at all, including the purpose in the indictment would add nothing. 83 F.3d at 1373–74 (citing *Clinton*, 260 F.2d at 825).

threaten her after they left Mississippi the first time and continued to threaten her after they left Mississippi the second time. This evidence is sufficient for a reasonable jury to conclude that Defendant continued to assault Complainant as they traveled to and from Mississippi. Although Defendant testified differently, the jury was entitled to believe Complainant's testimony rather than Defendant's; it is not the job of this Court to weigh the credibility of the witnesses.

Furthermore, Defendant's suggestion that since he had beaten Complainant before they entered Mississippi he is not culpable under § 1201(a)(1), even though he continued to hold her against her will, does not comport with case law. *See United States v. Sriyuth,* 98 F.3d 739, 750 (3d Cir.1996) (recognizing that jury was properly instructed that victim need only be unwillingly transported at the time she crossed state boundary); *United States v. Hughes,* 716 F.2d 234, 242 (4th Cir.1983) (Widener, J., concurring) (recognizing that requirement of interstate transportation is "merely a basis for federal jurisdiction rather than an integral part of the substantive crime"). There is nothing in the case law or the statute that suggests that if the defendant obtains his or her benefit prior to traveling in interstate commerce, but still holds the victim against his or her will, he or she may escape culpability. Such an interpretation is unsupported by law and would lead to an absurd result.

## IV.

We conclude, weighing the evidence in the light most favorable to the government, that there was sufficient evidence for a reasonable jury to find beyond a reasonable doubt that Defendant violated § 1201(a)(1) by kidnaping Complainant.

Accordingly, we AFFIRM Defendant's judgment of conviction.